Marty Harper (003416)
marty.harper@asualumnilawgroup.org
Kelly J. Flood (019772)
kelly.flood@asualumnilawgroup.org
ASU ALUMNI LAW GROUP
111 East Taylor Street, Suite 120
Phoenix, AZ  85004-4467
Telephone:  602-251-3620
Fax:  602-251-8055
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bruce Beckington, John Jurik, and James Van Sickle, | CASE NO. _____ |
| *Plaintiffs,* | **COMPLAINT** |
| vs. | (Jury Trial Demanded) |
| American Airlines, Inc., | |
| *Defendant.* | |

Plaintiffs Bruce Beckington, John Jurik, and James Van Sickle file this complaint to seek damages from Defendant American Airlines, Inc., to remedy pecuniary injuries caused by American Airline's overt collusion in the breach of the duty of fair representation by the US Airline Pilots Association.

For their complaint, Plaintiffs allege as follows:

## INTRODUCTION AND PARTIES

1. In 2005, US Airways (a bankruptcy debtor) and America West Airlines merged to form a new airline also called US Airways.

2. The pilots on both sides of that merger (the "East Pilots" from US Airways and the "West Pilots" from America West) agreed to an arbitrated merger of their separate seniority lists.

1       3.     That arbitration was conducted by George Nicolau.

2       4.     An award creating a merged seniority list (the "Nicolau List")

3 was announced in May 2007.

4       5.     The East Pilots immediately repudiated their agreement to

5 treat the Nicolau List as final and binding.

6       6.     In mid-2007, the East Pilots formed a single-airline union, US

7 Airline Pilots Association ("USAPA"), to oust the multi-airline union that

8 was representing both the East and West pilots, the Airline Pilots

9 Association ("ALPA").

10       7.     The East Pilots were able to use USAPA to oust ALPA because

11 their majority status in the post-merger airline allowed them to control a

12 single-airline union (which only represented US Airways pilots).

13       8.     In April 2008, USAPA succeeded ALPA as the bargaining

14 representative for all US Airways pilots.

15       9.     Under East Pilot control, USAPA repudiated the agreement to

16 honor the Nicolau List.

17       10.    In early 2012, US Airways entered into negotiations to merge

18 with American Airlines.

19       11.    As part of that process, USAPA entered into a contract with

20 US Airways, Inc., American Airlines, Inc. and the Allied Pilots Association

21 ("APA"), which was called the Memorandum of Understanding Regarding

22 Contingent Collective Bargaining Agreement ("the MOU").

23       12.    Eventually, in 2014, the pilots from legacy American Airlines,

24 the East Pilots, and the West Pilots all participated in an arbitration to

25 create a single integrated seniority list for the New American Airlines.

26       13.    This process is referred to as the Seniority Integration

27 Involving Pilots of New American Airlines ("the SLI Arbitration").

28

14. Plaintiff Bruce Beckington is a resident of the State of Arizona, who at all times relevant has been a West Pilot.

15. Plaintiff John Jurik is a resident of the State of Arizona, who at all times relevant has been a West Pilot.

16. Plaintiff James Van Sickle is a resident of the State of Arizona, who at all times relevant has been a West Pilot.

17. Defendant American Airlines, Inc., is a Delaware corporation, which is headquartered in Fort Worth, Texas.

**JURISDICTION AND VENUE**

18. This Complaint seeks damages under the Railway Labor Act, 45 U.S.C. § 151, et seq.

19. The Court has federal question subject matter 28 U.S.C. § 1331.

20. Venue is proper in the District of Arizona, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in that judicial district; or were directed at affecting one or more plaintiffs residing in that district.

21. This action for damages became ripe on or about September 6, 2016, when the Board of Arbitration issued the SLI award, which only then established that a substantial number of West Pilots would suffer pecuniary injuries from the failure to use the Nicolau List seniority order.

**FACTUAL ALLEGATIONS**

22. In May 2005, the former US Airways was in Chapter 11 bankruptcy for the second time in two years.

23. The US Airways reorganization plan called for it to merge with America West to form a new airline that would also be known as US Airways, pursuant to a contract referred to as the "Transition

Agreement."

24.   The Transition Agreement provided, among other things, that the East and West pilot groups would create a single integrated seniority list according to defined procedures that included, if negotiations failed, binding arbitration.

25.   The two pilots groups, East and West, eventually proceeded to arbitrate a seniority list that would integrate both pilot groups.

26.   Subject to predefined conditions that protected its economic interests, US Airways agreed in advance to accept the outcome of this arbitration as the final resolution of this seniority integration dispute.

27.   The Arbitration Board, chaired by George Nicolau, issued its decision on May 1, 2007, in a document referred to as the "Nicolau Award," establishing a seniority order referred to as the "Nicolau List." or List.

28.   On December 20, 2007, US Airways formally accepted the Nicolau Award.

29.   In May 2007, East Pilot Stephen Bradford began to plan to create a new union (USAPA) that would be controlled by the East Pilots because the East Pilots outnumbered the West Pilots by approximately three to one.

30.   USAPA began to represent the entire group of US Airways pilots—East and West—on April 18, 2008.

31.   Shortly thereafter, USAPA refused to honor the agreement to treat the Nicolau Award as final and binding.

32.   On September 4, 2008, six West Pilots filed an action in the United States District Court for the District of Arizona, alleging that in so doing USAPA breached the duty of fair representation ("DFR"). *Addington*

4

1  *v. USAPA,* No. CV 08-1633-PHX-NVW (*Addington I.*)

2  33. After a 10-day trial, a jury found that USAPA breached the
3  DFR because its sole reason to frustrate implementation of the Nicolau
4  List was to benefit East Pilots, rather than to benefit the bargaining
5  union as a whole.

6  34. The District Court (Judge Wake) ruled: "The West Pilots
7  remain entitled to a union that will not abrogate the Nicolau Award
8  without a legitimate purpose. Any waiver of that right must be
9  consensual." *Addington I,* Findings of Fact and Conclusions of Law and
10  Order, dated July 17, 2009 [Doc. 593] at page 46.

11  35. The District Court permanently enjoined and ordered USAPA
12  to: a) Make all reasonable efforts to negotiate and implement a single
13  CBA that will implement the Nicolau Award seniority proposal; b) Make
14  all reasonable efforts to support and defend the Nicolau Award in
15  negotiations with US Airways; and c) Not negotiate for separate collective
16  bargaining agreements for the separate pilot groups. *Addington I,* Partial
17  Judgment and Permanent Injunction [Doc. 594] at pages 2-3.

18  36. On appeal, the Ninth Circuit Court of Appeals ("Ninth
19  Circuit") vacated the District Court's Order on the basis that the dispute
20  was not ripe. *Addington v. USAPA,* 606 F.3d 1174, 1184 (Ninth Cir.
21  2010)

22  37. Notwithstanding finding lack of ripeness, the Ninth Circuit
23  cautioned USAPA that unless it "bargain[ed] in good faith pursuant to its
24  DFR, with the interests of all members—both East and West—in mind,"
25  there would be "an unquestionably ripe DFR suit, once a contract is
26  ratified." *Id.* at 1194, fn. 1.

27  38. On July 27, 2010, US Airways filed a declaratory judgment

28

5

action in this District Court, claiming that it required guidance as to, inter alia, whether it would be liable if it entered into a collective bargaining agreement with USAPA that did not require implementation of the Nicolau Award under the terms of the Transition Agreement. *US Airways v. Addington/USAPA*, 2:10-cv-01570-ROS (*Addington II.*)

39.   The District Court (Judge Silver) held that the Ninth Circuit's earlier ripeness ruling constrained it from providing US Airways full guidance, stating that "[p]ursuant to the Ninth Circuit's decision, any claim for breach of the duty of fair representation will not be ripe until a collective bargaining agreement is finalized."  *Addington II*, Order dated 10/11/12 [Doc. 193], at p. 7, ll. 21-22.

40.   Nonetheless, the District Court provided important guidance to the parties on several points by stating "decertification of ALPA and the certification of USAPA did not change the binding nature of the Transition Agreement" and "[w]hen the collective bargaining agreement is finalized individuals will be able to determine whether USAPA's abandonment of the Nicolau Award was permissible, i.e., supported by a legitimate union purpose."  *Id.* at p. 8, ll. 3-5.

41.   The District Court also found that "[t]hus, just as ALPA would have been bound by the Transition Agreement had it remained the pilots' representative, USAPA is bound by the Transition Agreement.  *Id.* at p. 6, ll. 18-20.

42.   The District Court also concluded that "[a]s for US Airways, it must negotiate with USAPA and it need not insist on any particular seniority regime.  But US Airways must evaluate any proposal by USAPA with some care to ensure that it is reasonable and supported by a legitimate union purpose."  *Id.* at p. 1, ll. 23-24; p. 2 at ll. 1-2.

1    43.    USAPA did not appeal.

2    44.    On November 29, 2011, American Airlines filed a Chapter 11
3    petition (*In Re AMR Corporation, et al.*, CH11 Case No. 11-15463 (SHL)).

4    45.    As previously noted, American Airlines and US Airways began
5    negotiating a potential merger in early 2012.

6    46.    In December 2012, American Airlines and USAPA improperly
7    colluded to draft and insert paragraph 10.h. into the MOU, which
8    allowed implementation of the MOU (a new collective bargaining
9    agreement) without implementing the Nicolau List as the Transition
10   Agreement required.

11   47.    The MOU became a new collective bargaining agreement
12   (MOU/CBA) (ultimately subject to approval by the Bankruptcy Court in
13   *In Re AMR Corporation*, CH11 Case No. 11-15463 (SHL)), when it was
14   ratified by the legacy US Airways pilots on February 8, 2013.

15   48.    On March 6, 2013, the West Pilots filed an action against
16   USAPA alleging that USAPA breached its duty of fair representation by
17   inserting language into paragraph 10.h of the MOU to once again
18   abrogate the Nicolau Award. *Addington v. USAPA*, 2:13-cv-00471-ROS
19   (*Addington III.*)

20   49.    By Order dated January 10, 2014, District Court concluded
21   that the West Pilots had failed to establish that USAPA breached its duty
22   of fair representation. *Id.* [Doc.  298].

23   50.    On June 26, 2015, the Ninth Circuit issued its Opinion
24   reversing the District Court, and ruling that in making a contract (the
25   MOU/CBA, which contained paragraph 10.h language) USAPA breached
26   its DFR because paragraph 10.h served "no legitimate union purpose."
27   *Addington v. USAPA*, 791 F.3d 967, 989-90 (2015).

28

51.    The Ninth Circuit remanded with "instructions to the district court to enter an order enjoining USAPA from participating in the McCaskill-Bond seniority integration proceedings, including any seniority-related discussions leading up to those proceedings, except to the extent that USAPA advocates the Nicolau Award." *Id.* at 991.

52.    The MOU/CBA, however, was allowed to stand.

53.    The West Pilots, through the West Pilot Seniority Integration Committee ("WPSIC") urged the SLI Board of Arbitration ("the Board of Arbitration") to integrate the Nicolau List with the legacy American pilots' seniority list to establish a new single integrated seniority list for the pilots of New American Airlines, and presented compelling arguments and evidence regarding the propriety of utilizing the Nicolau List.

54.    On September 6, 2016, the Board of Arbitration announced that it did not use the Nicolau List to integrate the legacy US Airways pilots (East and West) with the legacy American Airlines pilots.

55.    The effective date of the merger of American Airlines and US Airways was December 9, 2013.

56.    It was also the date used by the Board of Arbitration as the "snapshot" date for the SLI Arbitration.

57.    The Board of Arbitration explained that it did not use the Nicolau List because that list did not reflect "the facts and circumstances extant on our snapshot date of December 9, 2013."

58.    After the MOU/CBA was ratified, the Defendant failed to implement the Nicolau List as it was required to do under the Transition Agreement.

59.    But for the paragraph 10.h language in the MOU/CBA, the Nicolau List would have been the operative seniority list covering the

1   legacy US Airways pilots on December 9, 2013.

2   **CLASS ALLEGATIONS**

3   60.   Plaintiffs bring this action, pursuant to Rule 23(b)(3) of the
4   Federal Rules of Civil Procedure, on their own behalf and on behalf of the
5   West Pilot Class of all persons similarly situated.

6   61.   The putative West Pilot Class is defined as: All pilots who
7   were on the America West seniority list incorporated into the West CBA
8   at the time of the SLI Arbitration and who would have had a higher
9   seniority position on the seniority list announced by the Arbitration
10  Board on September 6, 2016, if the Board of Arbitration had used the
11  Nicolau List seniority order in its determination to integrate the legacy
12  US Airways pilots with the legacy American Airlines pilots.

13  62.   The putative West Pilot Class has at least 1300 members.

14  63.   Because the putative West Pilot Class has at least 1300
15  members, the class is so numerous that joinder of all such persons is
16  impracticable.

17  64.   There exist common questions of law and fact affecting the
18  members of the putative West Pilot Class.

19  65.   The standing of the named Plaintiffs to enjoy and protect the
20  seniority rights established by the Nicolau List arise from their status as
21  former West Pilots and is, therefore, the same as that for any other
22  former West Pilot.

23  66.   The named Plaintiffs will fairly and adequately represent the
24  interests of the putative West Pilot Class because:

25          a) They have moral and financial support from many putative
26          class members;

27          b) They are suffering the same kind of pecuniary injuries that

28

other putative class members are suffering on account of the
failure to use the Nicolau List in the SLI Arbitration; and

c) They have a good understanding of the issues underlying
this litigation and have demonstrated a willingness to invest
the necessary time and efforts to fulfill their duties as
representative parties.

67.     Material questions of law and fact arising from this action are common to the named Plaintiffs and other members of the putative class; these include the following:

a) Whether the damages claims of the named Plaintiffs and
other putative class members against American Airlines
accrued with the announcement of the SLI Award on
September 6, 2016.

b) Whether American Airlines and USAPA improperly colluded
with to place paragraph 10.h. into the MOU/CBA; and

c) Whether the placement of paragraph 10.h. into the
MOU/CBA was the proximate cause of the injuries claimed.

68.     Plaintiffs have retained counsel experienced in class action litigation to prosecute these claims.

69.     This action merits class action treatment because the factors enumerated herein satisfy the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

## CAUSE OF ACTION

70.     Plaintiffs re-allege each and every allegation set forth above as if fully set forth herein.

71.     As determined by the Ninth Circuit on June 26, 2015, USAPA breached its DFR by placing paragraph 10.h. in the MOU/CBA.

72.   Until the SLI Award was issued on September 6, 2016, the West Pilots did not have actual or constructive knowledge that USAPA's breach of its DFR caused actual, appreciable or nonspeculative pecuniary injury.

73.   As a result, a claim for damages arising from the breach of DFR did not accrue until September 6, 2016, when the Board of Arbitration did not use the Nicolau List to integrate the legacy US Airways pilots (East and West) with the legacy American Airlines pilots.

74.   A carrier shares liability for a union's DFR breach if it colludes in that breach.

75.   If American Airlines had not so colluded with USAPA the MOU/CBA would have triggered American Airlines' obligation to implement the Nicolau List prior to December 9, 2013.

76.    If American Airlines had implemented, or been in the process of implementing, the Nicolau List prior to December 9, 2013, that would have been part of the facts and circumstances extant on the snapshot date, December 9, 2013.

77.   If implementation of the Nicolau List would have been part of the facts and circumstances extant on December 9, 2013, then the Board of Arbitration would have used the Nicolau List to integrate the legacy US Airways pilots (East and West) with the legacy American Airlines pilots.

78.   If the Board of Arbitration would have used the Nicolau List to integrate the legacy US Airways pilots (East and West) with the legacy American Airlines pilots, then a substantial number of West Pilots would have had higher senior positions on the SLI seniority list.

79.   West Pilots who would have had higher senior positions on the SLI seniority list would have had substantially greater income over

the course of his or her career at American Airlines than they will have under the SLI seniority list that was determined by the Board of Arbitration.

80.   Each such pilot, therefore, has suffered pecuniary injury as a result of American Airlines and USAPA wrongfully colluding to place paragraph 10.h. in the MOU/CBA.

81.   American Airlines is liable to pay damages to each such pilot in an amount equal to the present day values of such pecuniary losses.

**PRAYER FOR RELIEF**

82.   Plaintiffs respectfully ask the Court for the following relief:

83.   Damages awarded in an amount to fully compensate Plaintiffs and the putative class for all injuries caused by American Airlines collusion in USAPA's DFR breach.

84.   Attorneys' fees and costs incurred for bringing this action.

85.   The Plaintiffs demand a jury trial.

Dated this 1st of February, 2017.

ASU ALUMNI LAW GROUP

 s/Marty Harper
Marty Harper
Kelly J. Flood
111 East Taylor Street, Suite 120
Phoenix, AZ  85004-4467
*Attorneys for Plaintiffs*