**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bruce Beckington, *et al.*, | No. CV-17-00328-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| American Airlines Incorporated, | |
| Defendant. | |

At issue is Defendant American Airlines, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 18, MTD), to which Plaintiffs filed a Response (Doc. 26, Resp.), and American filed a Reply (Doc. 28, Reply). The Court heard oral argument on the Motion on June 30, 2017. (Doc. 36, Tr.)

**I.  BACKGROUND**

In the First Amended Complaint (Doc. 17, FAC), the operative pleading, Plaintiffs Bruce Beckington, John Jurik, and James Van Sickle allege the following facts.[1] In 2005, America West Airlines and US Airways merged into an airline also called US Airways. The two merged airlines set forth their reorganization plan in a Transition Agreement, which among many things provided that the pre-merger America West pilots ("West Pilots"), of which Plaintiffs are three, and the pre-merger US Airways pilots ("East Pilots") would create a single integrated seniority list that US Airways would implement

---

[1] The parties have referred the Court to three related cases that have already been resolved in this District and the Ninth Circuit Court of Appeals, and the Court takes judicial notice of the records of those cases.

after a single Collective Bargaining Agreement ("CBA")—or "Single Agreement"—was negotiated between the pilots' union and the airline.

Two years after the merger, the West and East Pilots—both represented by their union at the time, the Air Line Pilots Association ("ALPA")—entered into binding arbitration pursuant to an ALPA Merger Policy, which resulted in a May 2007 award, called the Nicolau Award, that established an integrated seniority list, called the Nicolau List. The West Pilots claim that US Airways formally accepted the Nicolau Award in late 2007, but no Single Agreement was in place.

Apparently unhappy with the Nicolau List, the East Pilots formed a new union, the US Airline Pilots Association ("USAPA"), and used their numerical superiority to replace ALPA as the certified collective bargaining representative of both groups of pilots as of April 18, 2008. USAPA took the position that the Nicolau Award was binding only on ALPA, not USAPA. As a result, in the collective bargaining negotiations, USAPA proposed another integrated seniority list that was more favorable to the East Pilots.

On September 4, 2008, six West Pilots filed the first of three prior, related lawsuits in this District. (*Addington v. USAPA*, Case No. CV-08-1633-PHX-NVW ("*Addington I*").) In that action, the West Pilots raised claims under the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA"), against USAPA for breach of the duty of fair representation ("DFR") and against US Airways for failure to negotiate in good faith. The West Pilots sought injunctive relief that included requiring USAPA and US Airways to implement the Nicolau List in the CBA. At the end of a ten-day trial, a jury concluded that USAPA breached the DFR because its sole reason for proposing an integrated seniority list different from the Nicolau List was to benefit the East Pilots rather than the union of pilots as a whole. District Judge Wake entered a permanent injunction against USAPA to the effect of requiring it to advocate for the implementation of the Nicolau Award and to refrain from advocating for separate CBAs for the East and West Pilots. (*Addington I*, Doc. 593 at 46.)

On June 4, 2010, the Ninth Circuit vacated the District Court's judgment because it concluded the dispute was not ripe on account of the uncertainty as to whether a single CBA incorporating the Nicolau Award would be ratified by USAPA's membership and approved by the airline, and thus as to the appropriate remedy for the West Pilots' alleged harm. *Addington v. USAPA*, 606 F.3d 1174, 1179-81 (9th Cir. 2010). That court commented, "By deferring judicial intervention, we leave USAPA to bargain in good faith pursuant to its DFR, with the interests of all members—both East and West—in mind, under pain of an unquestionably ripe DFR suit, once a contract is ratified." *Id.* at 1180 n.1.

On July 27, 2010, US Airways filed the second related lawsuit in this District, a declaratory judgment action as to whether it would be liable under the Transition Agreement if it entered into a CBA with USAPA that did not require use of the Nicolau Award. (*US Airways v. Addington & USAPA*, Case No. CV-10-1570-PHX-ROS ("*Addington II*").) On October 11, 2012, in granting USAPA partial summary judgment and dismissing the remaining claims, District Judge Silver stated as follows:

> Pursuant to the Ninth Circuit's decision [upon its review of *Addington I*], any claim for breach of the duty of fair representation will not be ripe until a collective bargaining agreement is finalized. In this case, that means even though an integrated seniority regime is an incredibly important issue, and USAPA appears totally committed to a particular seniority regime, it is not possible to determine the viability of any claim for breach of the duty of fair representation until a particular seniority regime is ratified. When the collective bargaining agreement is finalized, individuals will be able to determine whether USAPA's abandonment of the Nicolau Award was permissible, *i.e.* supported by a legitimate purpose. Thus, the best "declaratory judgment" the Court can offer is that USAPA's seniority proposal does not automatically breach its duty of fair representation.

(*Addington II*, Doc. 193 at 7-8.) As for US Airways, Judge Silver stated that "it need not insist on any particular seniority regime" but "must evaluate any proposal by USAPA with some care to ensure that it is reasonable and supported by a legitimate union purpose." (*Addington II*, Doc. 193 at 1-2.)

Meanwhile, US Airways and American Airlines began negotiating a potential merger in early 2012, while American was engaged in a Chapter 11 bankruptcy reorganization. At that time, US Airways continued to operate with two pilot CBAs and two pilot seniority lists because a single CBA still had not been successfully negotiated between US Airways and USAPA and thus no single integrated seniority list—including the Nicolau List—had been implemented. In mid-December 2012, representatives of and attorneys for US Airways, American, USAPA and the Allied Pilots Association ("APA")—the union representing the American Airlines pilots—met to develop a Memorandum of Understanding ("MOU") with the purpose of providing a process for reaching a Merger Transition Agreement and a Joint Collective Bargaining Agreement ("JCBA"). Paragraph 10.h of the MOU ultimately contained the following provision: "US Airways agrees that neither this Memorandum nor the JCBA shall provide a basis for changing the seniority lists currently in effect at US Airways other than through the process set forth in this Paragraph 10." (Doc. 19-1 at 6-24, MOU.)

The West Pilots claim that, "[b]ut for the language that became paragraph 10.h, the MOU/CBA would have provided a basis for using the Nicolau List whenever pilot operations at US Airways would be integrated, as required by the 2005 Transition Agreement." (FAC ¶ 53.) Thus, the West Pilots contend, the purpose of Paragraph 10.h "was to avoid the obligation to use the Nicolau List to integrate pilot operations." (FAC ¶ 54.) The West Pilots further claim that, by agreeing to the language of Paragraph 10.h with the knowledge that USAPA had no legitimate union purpose for including that language, US Airways—now American—improperly colluded with USAPA. (FAC ¶ 56.)

The "legacy US Airways pilots" ratified the MOU on February 8, 2013, making it a CBA. US Airways and American ultimately merged on December 9, 2013.

On March 6, 2013, the West Pilots filed the third related lawsuit in this District, claiming that USAPA breached the DFR by including Paragraph 10.h in the MOU and again seeking injunctive relief requiring USAPA to use the Nicolau List to integrate pilot operations. (*Addington v. USAPA*, Case No. CV-13-471-PHX-ROS ("*Addington III*").)

During the course of that lawsuit, the West Pilots "were not permitted to fully discover who proposed the language of Paragraph 10.h of the MOU, why the meetings during which that language came about were limited mainly to attorneys, nor what was communicated between the parties to those meetings concerning the reasons why US Airways agreed to paragraph 10.h." (FAC ¶ 60.) In resolving the case on January 10, 2014, District Judge Silver concluded that the West Pilots' claim was ripe but that they failed to demonstrate that USAPA breached the DFR because "the present record does not establish the facially neutral provision [Paragraph 10.h] was *completely* divorced from legitimate union objectives." (*Addington III*, Doc. 298 at 8.)

On June 26, 2015, the Ninth Circuit agreed with the District Court that the West Pilots' claim was ripe but reversed as to the substance of the claim, concluding that USAPA breached the DFR because Paragraph 10.h served "no legitimate union purpose." *Addington v. USAPA*, 791 F.3d 967, 989-90 (9th Cir. 2015). The Ninth Circuit instructed the District Court "to enter an order enjoining USAPA from participating in the McCaskill-Bond seniority integration proceedings, including any seniority-related discussions leading up to those proceedings, except to the extent that USAPA advocates the Nicolau Award." *Id.* at 991. That court explained:

> Although there remains some ambiguity over whether the Nicolau Award would have been adopted *in toto*, to conclude, as does the dissent, that the West Pilots may not obtain any relief at all is to grant USAPA the benefit of doubt that USAPA itself created. . . . This remedy adequately accounts for our uncertainty over whether the Nicolau Award would have been implemented because it allows for the possibility that the [Seniority List Integration ("SLI")] arbitration panel might not ultimately use the Nicolau Award in its final integration of the US Airways and American Airlines Pilots. It also limits USAPA's participation in the seniority integration proceedings, but does not prohibit USAPA from advocating the seniority position of the East and West Pilots, collectively, as against the American Airlines pilots. . . . [O]ur injunction has the benefit of alleviating the West Pilots' hardship of fighting on two fronts and ensuring that the East Pilots cannot exploit the benefits of USAPA's breach any longer.

*Id.*

During 19 days of hearings between September 2015 and January 2016 before the Arbitration Board, the West Pilots, through the West Pilot Seniority Integration Committee ("WPSIC"), advocated for the integration of the Nicolau List with the legacy American pilots' seniority list. The merger committee representing the legacy American Airlines pilots advocated for the same. While USAPA did not participate in the hearings, a third merger committee, representing the East Pilots, advocated for an integrated seniority list that disregarded the Nicolau List.

On September 6, 2016, the Arbitration Board published the integrated seniority list. (Doc. 19-1 at 26-392, Integrated Seniority List ("ISL").) The Board declined to incorporate the Nicolau List, because that List constituted "an experienced arbitration panel's best judgment of a fair and equitable basis to integrate the seniority of the East and West pilot groups in 2007, based upon facts and considerations of fairness and equity as of May 2005." Since then, the Board stated, "many of the relevant facts and circumstances and equities . . . have changed, some dramatically." Moreover, the Board noted, it is evident "beyond cavil that negotiation, let alone US Air pilot ratification, of a joint collective agreement between US Air and ALPA or USAPA that incorporated the Nicolau Award ISL—one of the preconditions to the Nicolau Award becoming effective—was never a possibility." Further observing that the courts "have uniformly declined to impose, enforce or direct implementation of the Nicolau Award," the Board was "not persuaded that updating and implementing the integrated list of the Nicolau Award ISL is legally mandated, necessary, or appropriate, given the facts and circumstances extant on our snapshot date of December 9, 2013."

Here, in the fourth related lawsuit, the West Pilots are bringing a putative class action against American Airlines—which the West Pilots allege also stepped into the shoes of US Airways upon their merger—for violating the RLA by colluding with USAPA in breaching the DFR. The West Pilots base their claim on the Ninth Circuit's decision finding that USAPA breached the DFR but allege that the claim did not accrue until September 6, 2016, when the Arbitration Board declined to use the Nicolau List in

formulating an integrated seniority list. The West Pilots seek damages and attorneys' fees. American now moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and because the claim is time-barred under the applicable statute of limitations.

## II. LEGAL STANDARD

A complaint must include "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

### A. Breach of the Duty of Fair Representation: Causation and Collusion

American moves to dismiss the West Pilots' claim because the allegations of causation and collusion are inadequate and because courts have never recognized a stand-alone cause of action against an airline for collusion in violation of the RLA. A claim against an airline for collusion in a union's breach of the DFR requires adequate allegations of the underlying breach. *United Indep. Flight Officers, Inc. v. United Air*

*Lines, Inc.*, 756 F.2d 1274, 1283 (7th Cir. 1985) ("An employer is liable together with the union for the union's breach of its DFR if it acts in collusion with the union."); *Bishop v. Air Line Pilots Ass'n, Int'l*, 1998 WL 474076, at *18 (N.D. Cal. 1998). The West Pilots' claim is rooted in the claim against USAPA for breach of the DFR, and indeed the Ninth Circuit already concluded that such a breach occurred upon review of *Addington III*. 791 F.3d at 989-90.

### 1. Causation

The West Pilots' claim has two defects, as American points out. First, to state a claim, the West Pilots must allege sufficient facts demonstrating a causal connection between USAPA's wrongful conduct and the West Pilots' alleged injuries. *See Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010); *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1397 (9th Cir. 1986). The West Pilots allege that their injuries arise from the fact that the Arbitration Board did not use the Nicolau List in the final integrated seniority list. (FAC ¶¶ 84, 89-91.) As for causation, the West Pilots allege, "But for paragraph 10.h in the MOU/CBA, the Nicolau List would have reflected the facts and circumstances extant on December 9, 2013" and "the Board of Arbitration would have used the Nicolau List to create the SLI Award." (FAC ¶¶ 69-70.)

It's not that simple. The 2005 Transition Agreement always contained the provision that US Airways would implement an integrated seniority list only after a single CBA (or Single Agreement) was approved by the pilots' union and the airline. Each prior court opinion has recognized that the satisfaction of this condition by inclusion of the Nicolau List was either improbable or impossible, a proposition perhaps best described by the Arbitration Board in the 2015-16 Integrated Seniority List Award when it stated that it is evident "beyond cavil that negotiation, let alone US Air pilot ratification, of a joint collective agreement between US Air and ALPA or USAPA that incorporated the Nicolau Award ISL—one of the preconditions to the Nicolau Award

becoming effective—was never a possibility." (Doc. 19-1 at 63, Sept. 6, 2016 Arbitration Board ISL Award at 38.)

In its decision imposing injunctive relief against USAPA for its breach of the DFR, the Ninth Circuit did not mandate, or even imply a mandate, that the Arbitration Board incorporate the Nicolau Award in the ISL. The West Pilots argue that this was because the court did not want "to impose an affirmative obligation on a third party, the panel, to use an award that has not been imposed already by a court." (Tr. at 55.) However, in the *Addington III* decision, the Ninth Circuit was clear when it stated that the "harm resulting from USAPA's violation is the persisting *absence* of an integrated seniority list" but "that it is not certain whether the Nicolau Award would have been implemented fully but for USAPA's breach." 791 F.3d at 991. Repeating what has been evident from the start of these lawsuits, the court stated: "Because a good faith attempt to implement the Nicolau Award would have ultimately required a ratification vote by all the pilots, and we cannot know what the results of such a vote would have been, we can never be certain whether efforts to implement the Nicolau Award through a collective bargaining agreement with US Airways would have succeeded." *Id.*

As a result, it is impossible to now conclude that the Nicolau List would have been approved and thus provided a basis for the Arbitration Board's formation of the ISL but for USAPA's breach of the DFR.[2] Put another way, the West Pilots' theory of causation—from which its alleged injuries arise—is not plausible. For this reason alone, the Court must dismiss the West Pilots' claim against American. Moreover, the Court finds that this defect in the claim cannot be cured by amendment to the Complaint. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

---

[2] Taking a step back, the Court also notes that USAPA's breach of the DFR, which forms the basis of the West Pilots' current claim against American, was addressed and remedied by the Ninth Circuit in *Addington III* through an injunction prohibiting USAPA's participation in the ISL development process—a remedy that was imposed prior to the Arbitration Board's hearing and decision on a final ISL. The West Pilots' current claim implies that the remedy was insufficient to address USAPA's breach of the DFR and is thus, in essence, a request for a different result than they obtained in *Addington III*. The Court agrees with American that collateral estoppel bars the West Pilots from relitigating the same issues the Ninth Circuit decided in *Addington III*.

### 2. Collusion

The second defect American identifies in the West Pilots' claim is with regard to the allegations of collusion itself. To state a claim for collusion between an employer and a union under the RLA, a plaintiff must allege sufficient facts showing not only a breach of the DFR by the union causing the plaintiff's injuries, but also actions by the employer evidencing collusion, such as bad faith, discrimination or hostility toward the plaintiff. *See, e.g.*, *Rakestraw v. United Airlines*, 756 F. Supp. 474, 493-94 (N.D. Ill. 1991) (finding that an airline was not liable for collusion in union's breach of the DFR when union discriminated against a sub-group of pilots by obtaining lower seniority for them, even though airline was aware of the animosity toward the sub-group when it accepted the union's proposal). Demonstrating collusion requires something more than evidence that an airline negotiated and entered into a contract through which a union breached the DFR. *United Indep. Flight Officers*, 756 F.2d at 1283; *see also Am. Airlines Flow-Thru Pilots Coalition v. Allied Pilots Ass'n*, 2015 WL 9204282, at *3 (N.D. Cal. 2015). Otherwise, as American points out in its Motion, an airline would be under an obligation to supervise a union in the collective bargaining process, which may have a detrimental effect on labor-management relations. (MTD at 14 (citing *Cunningham v. United Airlines, Inc.*, 2014 WL 441610, at *11 (N.D. Ill. 2014)).)

The West Pilots argue the "something more" is US Airways's knowledge of a pattern of wrongdoing by USAPA on account of the court opinions in *Addington I* and *II*. In particular, the West Pilots refer to the District Court's statement in *Addington II* that US Airways must "evaluate any proposal by USAPA with some care to ensure that it is reasonable and supported by a legitimate union purpose." (FAC ¶ 42.) The West Pilots also allege that the language of Paragraph 10.h of the MOU was drafted in secret, attorneys-only meetings, which implies deceit. (FAC ¶ 50.)

Those allegations do not withstand scrutiny. With regard to whether District Judge Silver's statements in *Addington II* served as notice to US Airways of its alleged obligations, a more thorough reading of the statements does not lead to an inference or

conclusion that US Airways was under a heightened burden in negotiating with USAPA. Specifically, Judge Silver states that "based on the representation at oral argument that the seniority list is unlike any other matters addressed in collective bargaining, it is unlikely the West Pilots could successfully allege claims against US Airways merely for not insisting that USAPA continue to advocate for the Nicolau Award." (*Addington II*, Doc. 193 at 8.) The Court cannot now find that, as a result of *Addington II*, US Airways's approval of Paragraph 10.h—or refusal to insist that USAPA advocate for the Nicolau Award—is evidence of collusion with USAPA in its breach of the DFR.

Similarly, the fact that US Airways met with USAPA to develop an MOU with the purpose of providing a process for reaching a Merger Transition Agreement and a Joint Collective Bargaining Agreement—even if certain meetings were "lawyers-only" or behind closed doors—is not by itself evidence of collusion in USAPA's breach of the DFR. These allegations are more akin to those in cases where an employer negotiated or approved a contract with a union that breached the DFR, and the Court does not find that US Airways (and thus American) was on notice of a heightened duty, whether legally supported or not. *See United Indep. Flight Officers*, 756 F.2d at 1283; *Am. Airlines Flow-Thru Pilots Coalition*, 2015 WL 9204282, at *2-3; *Cunningham*, 2014 WL 441610, at *11; *Rakestraw v. United Airlines*, 756 F. Supp. at 493-94.

The West Pilots' allegations are insufficient to raise a plausible claim for American's collusion in USAPA's breach of the DFR, and the Court dismisses the West Pilots' claim for this independent reason. Based on the West Pilots' representations in their briefs and at oral argument, the Court does not find they could cure this defect by amendment.

### B. Statute of Limitations

American also argues that the West Pilots' claim in this action is barred under the applicable statute of limitations. Because the Court has concluded that the West Pilots fail to state a claim against American, it need not examine whether such a claim would be time-barred.

IT IS THEREFORE ORDERED granting Defendant American Airlines, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 18) and dismissing this action with prejudice.

IT IS FURTHER ORDERED directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 20th day of March, 2018.

Honorable John J. Tuchi
United States District Judge